686 A.2d 1096

**Tracy Irving WILLIAMS**

v.

**STATE of Maryland.**

**No. 77, Sept. Term, 1995.**

Court of Appeals of Maryland.

Dec. 26, 1996.

Margaret L. Lanier, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Mary Ann Ince, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for respondent.

Argued before MURPHY, C.J.,* and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

There are two issues presented by this appeal. The first, whether, and if so, under what circumstances, the State may cross-examine defense alibi witnesses regarding their pretrial failure to disclose, to the proper law enforcement authorities, evidence exculpatory of the defendant, was addressed in *Davis v. State*, 344 Md. 331, 686 A.2d 1083 (1996), filed today. The second involves the reviewability of a trial court's evidentiary ruling, pursuant to Maryland Rule 1–502 [now Maryland Evidence Rule 5–609], when the petitioner fails to object on the basis that the trial court did not conduct the probative value/prejudicial impact weighing the rule prescribes. We shall affirm.

## I.

The petitioner, Tracy Irving Williams, was convicted by a jury in the Circuit Court for Dorchester County of possession of cocaine with intent to distribute and related offenses. The crucial issue at trial was the identity of the person from whom the cocaine was seized. According to the arresting officer, while on patrol, he saw a man he recognized, from "previous contact," as the petitioner riding a bicycle slowly, in the company of two other men. Having information that the petitioner was wanted on an outstanding warrant, he said that he approached the man, "as stealthily as [he] could", grabbing him by the back of the jacket he was wearing. While holding the jacket, the officer stated that he advised the man that there was an outstanding warrant for his arrest, whereupon the man slipped out of the jacket and off the bike and fled on

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court, after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of the opinion.

foot. Recovered from one of the jacket pockets were a plastic bag with a white rock-like substance and an electronic scale. Analysis proved the rock-like substance to be cocaine.

In addition to denying that he was the man the officer accosted, the petitioner offered the testimony of Lester Demby and Mia Jones, his girlfriend and the mother of his children. Demby testified that he knows the petitioner well and that the man the arresting officer grabbed was not the petitioner. Ms. Jones testified that the petitioner was with her and their children, "hanging out," on the day in question and did not leave the house.

The petitioner appealed his convictions to the Court of Special Appeals. That court affirmed the judgments of the circuit court, *Williams v. State*, 99 Md.App. 711, 639 A.2d 180 (1994) holding, *inter alia*, that the trial court properly permitted the State to cross-examine the petitioner's alibi witness regarding her pretrial silence, *id.* at 720–21, 639 A.2d at 185, and that the petitioner's contention that Mr. Demby's theft conviction was erroneously admitted for impeachment purposes was not preserved for appellate review. *Id.* at 715–16, 639 A.2d at 182–83. We granted the petitioner's petition for certiorari, 339 Md. 560, 664 A.2d 373 (1995).

## II.

The petitioner's first contention is that an alibi witness's pretrial silence regarding exculpatory evidence he or she may have has no relevance to that witness's testimony at trial and, in any event, should be excluded as unfairly prejudicial. Alternatively, he argues that the State failed to establish the relevance of Ms. Jones's pretrial silence and, after she was disclosed to the State as an alibi witness, her refusal to speak with the prosecution. Therefore, he continues, the State's cross-examination of Ms. Jones concerning those matters should not have been allowed. Conceding that she had the requisite knowledge and the *motive to disclose*, the petitioner contends that the State's foundation failed in that the record reflects that Ms. Jones was not familiar with the means of

reporting the exculpatory information she possessed to the police and that her refusal to speak with the State was on the advice of the petitioner's counsel.[1]

Pointing out that Ms. Jones's name was disclosed to the State six days prior to commencement of the trial, the petitioner maintains that any inquiry the State was permitted to make regarding her pretrial silence should have been limited to the time period preceding that disclosure. Finally, the petitioner argues that "[u]nder the circumstances of this case, the probative value of Jones's silence, which is normally slight, was reduced to nothing [while] both the [witness's] credibility and the credibility of petitioner's defense were unfairly impugned." Petitioner's brief at 16. Therefore, he asserts, allowing cross-examination regarding Ms. Jones' pretrial silence, was error, its probative value being greatly outweighed by its prejudicial impact.

The Court of Special Appeals rejected each of the petitioner's arguments. *Williams v. State*, 99 Md.App. at 719–22, 639 A.2d at 184–86. Initially, it noted that "[t]here has been no argument that prejudice outweighed relevance, but simply

---

1. With regard to the latter foundational requirement, the petitioner relies upon the foundation prescribed by *Commonwealth v. Egerton*, 396 Mass. 499, 487 N.E.2d 481, 487 (1986), rather than that prescribed by *People v. Dawson*, 50 N.Y.2d 311, 428 N.Y.S.2d 914, 921 n. 4, 406 N.E.2d 771, 777 n. 4 (1980). In *Egerton*, the court opined:

    The prosecutor must establish "that the witness knew of the pending charges in sufficient detail to realize that he possessed exculpatory information, that the witness had reason to make the information available, that he was familiar with the means of reporting it to the proper authorities, and that the defendant or his lawyer, or both, did not ask the witness to refrain from doing so.

    487 N.E.2d at 487 (quoting *Commonwealth v. Brown*, 11 Mass.App. 288, 416 N.E.2d 218, 224 (1981), *cert. denied*, 383 Mass. 891 (1981)). By way of contrast, the foundation the prosecution was required to lay in *Dawson*, was:

    [To] demonstrat[e] that the witness was aware of the nature of the charges pending against the defendant, had reason to recognize that he possessed exculpatory information, had a reasonable motive for acting to exonerate the defendant and, finally, was familiar with the means to make such information available to law enforcement authorities.

    50 N.Y.2d 311, 428 N.Y.S.2d at 921 n. 4, 406 N.E.2d at 777 n. 4.

that the inquiry was utterly devoid of any relevance whatsoever." *Id.* at 719, 639 A.2d at 184. It then observed that information bearing on the *bona fides* of an alibi defense, including "knowledge of the circumstances of when and how the 'miscarriage of justice' was brought or not brought to the attention of the authorities" is "by definition, relevant." *Id.* at 719–20, 639 A.2d at 184. Addressing, more particularly, the relevance of an alibi witness's pre-arrest silence, the intermediate appellate court noted that that depended upon a proper foundation having been laid. *Id.* at 720, 639 A.2d at 185. Adopting for the purpose of determining the relevance of the Ms. Jones's pretrial silence, the foundation prescribed by *People v. Dawson,* 50 N.Y.2d 311, 428 N.Y.S.2d 914, 921 n. 4, 406 N.E.2d 771, 777 n. 4 (1980), the court concluded:

> Such a predicate was established in this case. Mia Jones became aware of the charges against the appellant on December 15, 1992. She was fully aware of the fact that she possessed absolutely exculpatory information. As the appellant's live-in girlfriend and the mother of his children, moreover, she had a reasonable motive for wishing to exonerate him. A permissible inference could be drawn that she was familiar with some means to make such information known to law enforcement authorities.

*Id.* at 720–21, 639 A.2d at 185. The court recognized that there is an emerging body of case law in this area, citing *Brown, supra,* and *State v. Silva,* 131 N.J. 438, 621 A.2d 17 (1993). In both of those cases the foundational requirement that the non-disclosure not be requested by the defendant or his counsel, or both was mentioned. *Brown,* 416 N.E.2d at 224; *Silva,* 621 A.2d at 22–23. Nevertheless, the intermediate appellate court did not address the petitioner's contention that the witness had been instructed by defense counsel not to discuss the case with the State.

In *Davis,* this Court recognized that, although citizens ordinarily are not legally obligated to report exculpatory information, in the absence of specific legislative directives, an alibi witness's pretrial silence may be relevant to that witness's credibility at trial, 344 Md. at 335–336, 686 A.2d at 1085,

as well as to the credibility of the alibi defense. *Id.* Before a witness may be cross-examined with regard to his or her pretrial silence, the relevance of that pretrial silence must be established. *Id.* at 336–337, 686 A.2d at 1085–1086. The burden in that regard rests with the State. *Id.* at 337, 686 A.2d at 1086 (citing *Brown,* 416 N.E.2d at 225). We noted in *Davis* that a witness's pretrial silence is relevant if it would have been natural for the witness to report evidence exculpatory of the defendant, *i.e.,* the alibi, immediately to law enforcement authorities. *Id.* at 338, 686 A.2d at 1086 (citing *Silva,* 621 A.2d at 22). *See also Brown,* 416 N.E.2d at 224; *Dawson,* 50 N.Y.2d 311, 428 N.Y.S.2d at 918–19, 406 N.E.2d at 775; *People v. Brown,* 62 A.D.2d 715, 405 N.Y.S.2d 691, 695 (1978). Thus, we stated that the burden could be met by offering evidence from which it could be determined that there exists "a relationship between the witness and the defendant such that it would be the natural impulse of the witness to act to exonerate the defendant, a relationship of such a nature that, if the witness possessed evidence exculpatory of the defendant he or she would disclose it immediately to law enforcement authorities." *Davis,* 344 Md. at 345, 686 A.2d at 1089. That showing, we asserted, "is sufficient to give rise to an apparent inconsistency between the witness's pretrial silence and his or her testimony at trial." *Id.* at 345–346, 686 A.2d at 1089–1090.

When the State has established that the alibi witness's natural impulse is to disclose exculpatory information to the proper authorities, the witness's pretrial silence is analogous to a prior inconsistent statement. *Id.* at 338, 686 A.2d at 1086 (citing *Silva,* 621 A.2d at 22). As such, it bears upon the veracity of the witness's trial testimony and the State is permitted to expose, on cross-examination, for impeachment purposes, the fact that the witness did not earlier disclose the exculpatory information. *Id.* at 344, 686 A.2d at 1089 (citing *Dawson,* 50 N.Y.2d 311, 428 N.Y.S.2d at 920–21, 406 N.E.2d at 777). While acknowledging a preference that the preliminary determination be an express one, the Court recognized that it

may be implicit, given that the foundation required is independently admissible and judges are presumed to know the law and properly to apply it. *Id.* at 338, 686 A.2d at 1086 (citing *Beales v. State*, 329 Md. 263, 273, 619 A.2d 105, 110 (1993)).

The adequacy of the foundation laid by the State is, as we held in *Davis*, a preliminary determination—it must be made prior to any inquiry being pursued with regard to the witness's pretrial silence—committed to the sound discretion of the trial court. *Id.* at 338, 686 A.2d at 1086 (citing *United States v. Hale*, 422 U.S. 171, 176, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99, 104 (1975)). The court's determination in that regard, we continued, will not be disturbed absent a manifest abuse of discretion. *Id.* (citing *Oken v. State*, 327 Md. 628, 669, 612 A.2d 258, 278 (1992) in turn citing *Trimble v. State*, 300 Md. 387, 401–02, 478 A.2d 1143, 1150 (1984), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985)). We recognized a distinction between the trial court's preliminary determination and the responsibility of the trier of fact ultimately to decide the legitimacy of the alibi as well as the credibility of the alibi witness. *Davis*, 344 Md. at 338–339, 686 A.2d at 1086–1087. Thus, we noted that the jury "is not bound to accept the trial court's preliminary determination" that the alibi witness's natural tendency, given the relationship with the defendant, would be to exculpate the defendant and, so, the failure of such a witness to disclose the exculpatory evidence would be inconsistent with that witness' trial testimony. *Id.* at 339, 686 A.2d at 1087. That is so, we pointed out, because the preliminary determination provided the reason for the State's inquiry into the pretrial silence, while "the significance of the witness's pretrial silence is another matter which must be determined by the jury." *Id.*

Addressing how to assess the defense witness's pretrial silence, we observed:

> In addition to the fact of pretrial disclosure, those factors which, under the majority view, are characterized as founda-

tional prerequisites, are the "attendant facts and circumstances", on the basis of which the credibility of the alibi witness's testimony is to be evaluated. Whether, and when, a witness acquired knowledge making it possible for that witness to provide law enforcement authorities with exculpatory evidence, and his or her awareness of the procedure or means of doing so, do not tend to prove a natural tendency to report exculpatory information and, thus, do not give rise to an impeachable inconsistency; only the relationship between the witness and the defendant gives rise to such an inference. Instead, those matters tend to explain why the witness did not, in the particular case at issue, disclose the exculpatory information. Indeed, that is their only relevance. Consequently, the proponent of the alibi evidence is best situated to present the reasons why, although it would have been natural to do so, the alibi witness failed to disclose to the authorities information he or she possessed which tended to exculpate the defendant. Such evidence is more logically and appropriately presented on redirect examination, to rehabilitate the alibi witness. To place that burden on the State would be both onerous and illogical.

*Id.* at 345, 686 A.2d at 1090. We concluded:

As we see it, the State may inquire into the alibi witness's pretrial silence once it has established that the relationship between the witness and the defendant is such that the witness would have a natural tendency to disclose the exculpatory evidence he or she possessed to the proper authorities. Based on that inquiry, the jury could infer that the witness's pretrial silence is inconsistent with his or her trial testimony. The defense would then be free to attempt to negate the inconsistency by explaining his or her silence.

*Id.* at 345–346, 686 A.2d at 1090.

█ *Albeit* a different analysis, application of these principles to the case *sub judice* demonstrates that the Court of Special Appeals correctly affirmed the judgment of the circuit court. Evidence that Ms. Jones was the petitioner's girlfriend and the mother of his two children, brought out by way of

background on direct examination and re-emphasized, by the State, on cross-examination, sufficiently established that it would have been natural for her to have reported the exculpatory information that she possessed to the law enforcement authorities in an effort to exonerate the petitioner. Thus, the State's cross-examination of Ms. Jones as to her pretrial silence was fully justified.

To be sure, Ms. Jones's explanation as to why she was unwilling to speak to the prosecutor, *i.e.*, "Because I have never been through this before I didn't know what to do," is susceptible to the interpretation the petitioner places on it— that she did not know the means by which to disclose the exculpatory information to the authorities. Similarly, from Ms. Jones's testimony that she disclosed the alibi information to defense counsel, it could be inferred that her refusal to speak to the State was a result of defense counsel's advice. Neither of these matters were resolved by the court, as a matter of foundational fact. If they are, indeed, matters of foundation, then it is, as the petitioner pointed out, required that there be some affirmative finding of those facts.[2]

*Davis* is dispositive. In that case, there was an issue as to whether the alibi witness was aware of the means to apprise the appropriate authorities of the exculpatory information he possessed. We noted, in *Davis*, that that was a matter for resolution by the jury; it was a matter of defense, explanatory of why, in the particular case, disclosure to the authorities was not made. Although the issue was not presented in *Davis*, the

---

2. The petitioner did not object to the line of questioning that elicited those matters nor did he ask that the court make the findings he now claims it should have made. Accordingly, neither issue is preserved for review, in any event. *See* Maryland Rule 4–323(a) ("An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent") and (c) ("For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the actions the party desires the court to take or the objection to the action of the court"). *See also* Maryland Rule 8–131(a) ("[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court …").

same analysis applies to the issue of whether the witness's pretrial silence was due to defense counsel's advice. Whether the witness's silence was attributable to the advice of defense counsel, or was a reflection on the legitimacy of the alibi defense, was a matter properly resolved by the jury. The witness was free to explain why she did not speak to the State and, having done so, it was the jury's task to credit or discredit her explanation. There was no error.

### III.

The petitioner's second contention revolves around the trial court's ruling permitting the State to impeach another defense witness with a prior conviction. The petitioner produced, as a defense witness, Lester Demby. Demby testified that he knew the defendant well, that the person accosted by the police, in his presence, and whose coat was seized, was not the petitioner, and that, although the police officer called the man he seized by the petitioner's name, that man was a stranger to him. The State proposed, on cross-examination, to impeach Demby's credibility by proving that he had been previously convicted of theft. Defense counsel challenged whether misdemeanor theft was an impeachable offense. The colloquy was as follows:

Q [By the State]: Were you the same individual that was convicted and pled guilty to the charges in Anne Arundel County of theft under $300 on June 12, 1989?

A No, I only went to court once.

DEFENSE COUNSEL: Objection.

COURT: Want to approach the bench.

DEFENSE COUNSEL: The misdemeanor theft issue, your Honor, is not a crime of moral turpitude which would be used to impeach the witness, your Honor.

STATE: That, your Honor is a crime of dishonesty whether it is a misdemeanor or a felony.

DEFENSE COUNSEL: Misdemeanor theft is not a crime of moral turpitude which can be used in this case for purposes of impeachment.

COURT: Doesn't that go towards a person's credibility?

DEFENSE COUNSEL: It can only be used for grounds of moral turpitude used to impeach him, your Honor. Misdemeanor theft is not a crime of moral turpitude.

STATE: Crime of dishonesty, your Honor, larceny is in fact one. And the difference between the two is just that the penalty [sic] in varies whether it's a felony or a misdemeanor. It is an impeachable offense.

DEFENSE COUNSEL: The State's novel approach is to the law that dishonesty that is never used as a criteria in any of the case law relating to impeachment of witnesses. Any one that breaks the law is dishonest, your Honor, that is not an issue. This does not qualify as such and the State is not allowed to bring that up and by having brought it up we would make a motion for mistrial, your Honor.

COURT: The objection is overruled and the motion is denied.

Demby then acknowledged having been convicted of theft.

The petitioner argues that the trial court failed to balance the probative value of the proffered conviction against its prejudicial impact, as required by Maryland Rule 1–502 [3] and, therefore, erred in permitting the State to impeach the witness by use of that conviction. Conceding that to preserve this point for appeal, he must have objected, *see* Maryland Rule 4–323(a), the petitioner argues that "it has never been required in Maryland that a party ask the judge to use a particular decisional process." Petitioner's brief at 18. Not-

---

**3.** Maryland Rule 1–502 was in effect at the time of the petitioner's trial. Effective July 1, 1994, Maryland Rule 1–502 was rescinded and reenacted, without substantive change, as Maryland Evidence Rule 5–609. Maryland Rule 1–502, as relevant, provided:

(a.) *Generally.*—For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination, but only if the crime was an infamous crime or other crime relevant to the witness's credibility and the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

ing that the rule requires the court to make a determination that the probative value of the evidence outweighs the danger of unfair prejudice to the witness or the objecting party before admitting evidence of an otherwise eligible prior conviction, he, in effect, argues that he is entitled to review of the trial court's decision in that regard, notwithstanding his failure to challenge it on those grounds. To support his contention, the petitioner relies heavily on *State v. Woodland*, 337 Md. 519, 654 A.2d 1314 (1995) and *Beales v. State*, 329 Md. 263, 619 A.2d 105 (1993).

In *Beales*, this Court reversed a defendant's conviction where "[t]he record ... demonstrate[d] that the trial court was not yet familiar with, and did not appropriately apply the new rule that had gone into effect only the week before." 329 Md. at 274, 619 A.2d at 110. Having considered them, we were satisfied that the trial court's "elliptical remarks" did not "sufficiently demonstrate that it assessed the relative weights of probative value and prejudicial danger." *Id.* A different result was reached in *Woodland*. In that case, we were satisfied, after considering the relevant colloquy, that the trial court conducted the requisite balancing. 337 Md. at 526, 654 A.2d at 1317. It is of some significance that in both *Beales* and *Woodland*, the defendant had raised the proper application of Rule 1–502. Indeed, it was against this backdrop that we commented, in *Woodland*, that "[t]here is no requirement that the trial court's exercise of discretion be detailed for the record so long as the record reflects that the discretion was in fact exercised." *Id.* (citing *Beales*, 329 Md. at 273–74, 619 A.2d at 110).

Rejecting the petitioner's argument, the intermediate appellant court opined:

Without intimating for a moment that we think the trial judge abused his discretion in this regard, the short answer to the contention is that the appellant never raised the issue of balancing below. Nothing with respect to such balancing was brought to the judge's attention. No ruling was made in that regard. We have no idea whether, in the privacy of

his conscience, the judge did or did not engage in any balancing. Quite simply, the issue was never raised. What was preserved is not being pursued; what is being pursued was not preserved.

*Williams,* 99 Md.App. at 716, 639 A.2d at 182–83. Under the circumstances here presented, with that opinion we agree.

*JUDGMENT AFFIRMED, WITH COSTS.*

RAKER, J., concurs in the judgment only.

ELDRIDGE, J., dissents.

ELDRIDGE, Judge, dissenting.

I dissent for the reasons set forth in my dissenting opinion in *Davis v. State,* 344 Md. 331, 353, 686 A.2d 1083, 1092 (1996).